**Tami Leigh MIX, Appellant**

v.

**Brett PETTY, Appellee**

**NO. 2014–CA–001470–ME**

Court of Appeals of Kentucky.

RENDERED: MARCH 27, 2015; 10:00 A.M.

Rehearing Denied July 9, 2015.

in *Rachal* would today be called wrongful use of civil proceedings.

Briefs for Appellant: Tami Leigh Mix, pro se, Louisville, Kentucky.

Brief for Appellee: Linda J. Noll, Louisville, Kentucky.

BEFORE: COMBS, J. LAMBERT, AND STUMBO, JUDGES.

## OPINION

LAMBERT, J., JUDGE:

Tami Leigh Mix has appealed from the orders of the Jefferson Family Court terminating Brett Petty's obligation to pay child support and medical expenses for their son as of May 30, 2014. She contends that these obligations should have continued for an additional six months pursuant to Kentucky Revised Statutes (KRS) 403.213(3) because their son remained a high school student after he reached the age of emancipation. Because we agree with Tami that the family court erred as a matter of law in assigning May 30, 2014, as the end of the school year, we affirm in part and reverse in part.

Tami and Brett are the natural parents of Tristan Mix (the child), who was born on November 15, 1994, in Louisville, Kentucky. Tami and Brett were not married, and Tami obtained a DNA test in June 2007 that confirmed paternity. In May 2008, Tami, who has been proceeding *pro se* throughout this proceeding, filed a complaint in the family court to set child, education, and medical support payments retroactively from June 2007, when paternity was determined, through the child's graduation from high school. In her complaint, Tami stated that she was not working due to a permanent ankle injury she incurred in 2003. She had been living on $500.00 per month she received in maintenance from a prior marriage. The maintenance payments ended in May 2008, and she was in the process of applying for disability benefits.

Brett, through his attorney, filed a response and counter-petition, indicating that there had been some uncertainty concerning the child's paternity. For his counter-petition, Brett requested that the court enter a finding of paternity, award joint custody of the child to him and Tami, set child support pursuant to the Kentucky Child Support Guidelines, and establish reasonable parenting time.

The family court ordered the parties to mediate the parenting time schedule and the calculation of child support. No agreement was reached. Tami was also ordered to present a letter from her treating physi-

cian stating that she could not work so that their respective child support obligations could be calculated. By order entered September 15, 2008, the court approved the parties' agreement regarding permanent child support. Brett agreed, and was therefore ordered, to pay $192.48 in child support on a bi-weekly basis as well as 80% of the uninsured medical expenses. The parties returned to court beginning in 2009 on various motions related to Brett's child support obligation as well as the child's insurance and medical expenses. In 2009, the court modified Brett's child support to $325.00 per month due to his unemployment, but raised it in December 2009 to $398.38 per month, to be paid at a rate of $183.87 on a bi-weekly basis. In an order entered September 27, 2010, the court ruled on various motions, including whether Brett's child support obligation should be modified. Because Tami did not present the court with any evidence regarding her claimed disability or inability to work, the court found her capable of earning at least minimum wage and imputed income to her. Based upon its calculations, the court did not find that there had been at least a 15% change in circumstances to support changing Brett's monthly child support obligation, thereby denying Tami's motion to modify, and ordered Brett to continue to pay Tami $183.87 biweekly in child support.

In 2012, Tami filed another motion to recalculate Brett's child support and medical expense obligations. She stated that she had been diagnosed with breast cancer, chronic pain, and fibromyalgia, in addition to her ankle condition, and that she would be undergoing surgeries and procedures to treat her cancer diagnosis. Based upon her incapacities, Tami argued that her income should not be estimated as it had been previously. On September 27, 2012, the family court entered an order granting Tami's motion to modify. The court ordered Brett to pay Tami $541.80 per month in child support and 99% of the uninsured medical expenses within thirty days of receipt of the expense, retroactive to June 6, 2012.

Brett moved the court to clarify the order related to the wage assignment portion and requested the income and medical insurance cost information be used to calculate the child support obligation. Tami objected to Brett's discovery requests, including a request for production of documents, stating that it was an undue physical and mental burden for her to comply with the request due to her recovery from surgery. She mentioned in her motion that she had been homeschooling the child for several years. By order entered November 15, 2012, the family court set aside the wage assignment order and denied Tami's motion for a protective order, noting that she had placed her medical condition before the court in her motion to modify when she argued that she should no longer be imputed income for purposes of the child support calculation. By separate order entered the same day, the court made more specific findings to support its child support order, including that there had been a substantial and continuing material change in Tami's condition and that she should not be imputed income pursuant to KRS 403.212(2)(d). The court noted that Tami had been diagnosed with breast cancer in July 2011 and underwent surgery on August 30, 2012. The court also noted that Tami had applied for, but had not yet been approved for, SSI benefits. The only other evidence established that she earned $20.00 per month. Thus, the family court assigned 99% of the child support obligation to Brett and 1% to Tami. The court used the same allocation for the child's health care expenses and extraordinary medical expenses.

In October 2013, Brett filed a motion to terminate child support based upon Tami's choice to homeschool the child and her exclusive control over the length of time necessary to complete his high school education. While Tami stated in her 2008 petition that the child would turn eighteen years old at the beginning of his senior year, records attached to the motion revealed that it took thirteen months and twenty-seven months to complete his freshman and sophomore terms, respectively, and that he did not begin his junior year until February 2013. Tami had been using the A Beka Independent Study Program located in Pensacola, Florida, for the child's curriculum, which did not offer a diploma upon graduation. Brett also noted that the child had been enrolled in a high school sports hockey league in Oldham County for the 2011–2012 and the 2012–2013 academic years, which required academic standards to be maintained.[1] Brett argued that if the child had been in a traditional program, he would have either completed his program or been in the final months of his senior year at that time. In an attached affidavit, Brett stated that he was unaware that the child was having any educational delays until February 2013, but believed that he would be graduating in May 2013. Therefore, Brett moved the court to terminate his child support obligation upon the child's nineteenth birthday, November 15, 2013.

The court held a hearing on February 17, 2014, on Brett's motion to terminate child support.[2] The court framed the sole issue before it as whether Tami delayed the child's education to collect child support for a longer period of time.

Tami testified first, on cross-examination. The child had turned nineteen years old on November 15, 2013. He had been attending a homeschool program using different teachers through A Beka Academy, and Tami stated that the child attended school throughout the year, rather than taking a longer break during the summer. He began his senior year at the beginning of November 2013, and he used various methods, including Saxon videos for math and A Beka courses for other subjects. Tami stated that his education had been delayed due to his attention deficit and oppositional defiant disorders. He had problems retaining information.

The child began his sophomore year in November 2010 and did not complete that grade level until January 2013. Tami explained that the child had been experiencing difficulty with his ADD and transitioning. She had also been diagnosed with cancer and underwent surgery for her cancer during that time. The child needed longer breaks to deal with her cancer diagnosis and treatment. His first longer break was in September 2011 for a total of sixteen school days, and the second break from August 27, 2012, to September 24, 2012, when she had surgery. He had not completed the work to get the credits from A Beka after the first year of his sophomore grade level due to his ADD. Had the child remained on point up until the tenth grade, he would have graduated in November 2013. The child began his junior year in early 2013 and completed it in November 2013. He began his senior year that month, and Tami believed he would

1. At a hearing, Tami disagreed that the hockey league required the child to maintain academic standards.

2. The court also considered Brett's motion to alter, amend, or vacate an earlier order regarding credit for the use of mail order prescriptions. We shall not address this motion as it is not relevant to our decision in the present case.

complete his senior year in November 2014.

Tami discovered that support payments would continue by statute until the child's nineteenth birthday if he was still in high school when she received interrogatories from Brett asking for information about the child's education. She denied that she delayed his education in order to continue to receive child support payments. Tami stated that she had worked with the child's medical providers over the years to deal with his issues. Based on the subjects he had to take and his learning disabilities, Tami believed it would take a full year to complete his courses, with breaks. She denied that he needed a tutor, stating that he was a straight-A student. It would just take longer for him to retain the information, and he would have to repeat videos and readings multiple times before he would learn it.

Brett testified that he had only been able to have limited time with the child. He was familiar with ADD because his eldest child had also been diagnosed with that condition. This did not cause his other child any problems. Brett did not believe his child with Tami would be at the same point had he attended a public school.

Tami chose to testify as well. The court directed her to show that the child was actively enrolled in his schoolwork. She presented evidence that she had notified Jefferson County Public Schools that the child would be homeschooled, took attendance, and kept report cards. The child was not employed outside of the home due to his learning disabilities; he would not be able to work full time and continue with his education. His education was a priority in their house. On cross-examination, Tami stated that the A Beka program they used was the independent study program. She said she did not control how fast he

completed his courses; she said the child's ADD and ODD controlled how quickly he could complete them. Tami denied that she had delayed the child's education to collect more money.

In closing, Brett argued that the school year generally runs from August through May or June and that Tami had complete control over how long it would take the child to complete his academic years. Due to the delays at Tami's hand, he asserted that child support should be terminated at that point. Tami argued that A Beka provided the curriculum and that it took the child longer to complete his courses due to his problems with retention and the need to repeat lessons and readings.

On July 23, 2014, the family court entered an order ruling on Brett's motion to terminate his child support obligation. The court recognized that the child had reached the age of nineteen the previous November and had not yet graduated from high school. The court further recognized that Tami had been homeschooling the child using a curriculum from A Beka Academy. The court then stated:

> While the dates of an academic school year for all schools and students is not exactly the same, a school year for students generally runs from the fall (August) of one year to the spring (May) of the following year. **The Court not having been advised otherwise, will take judicial notice of a normal school year and finds "completion of the school year" for the student's 2013–2014 academic school year, for the purposes of this action, to be May 30, 2014.** [Emphasis in original.]

The court found that while the child had reached the age of nineteen, he had not graduated from high school and was pursuing a diploma through a homeschool program. Therefore, Brett's motion to terminate child support was premature.

However, the court went on to rule that his child support obligation would terminate by operation of law "on the date the child has completed the course work necessary for his graduation or the end of the 2013–2014 academic school year (May 30, 2014), whichever comes first."

Tami moved the court to alter, amend, or vacate the above order in relation to the date Brett's child support obligation would terminate. She stated that the child would still be a high school student after May 30, 2014, and would only be halfway through the academic year. She said that she submitted evidence and verbally informed the court about the child's academic year, including evidence of his mental and learning disabilities. She requested that the termination date be extended to his actual completion of graduation credits or his twentieth birthday, whichever came first. To keep the order as it was written would cause the child to drop out of school and get a job to support himself, as she was not well enough to work. At the hearing on the motion, Brett objected to Tami's motion. Tami again stated that the child would have to get a full-time job if the court denied her motion. The family court denied Tami's motion by order entered August 4, 2014. This appeal now follows.

In her appeal, Tami continues to argue that the child would still be a high school student for an additional six months after the May 30, 2014, cut-off date the trial court imposed and that Brett's child support obligation should continue.

Kentucky Rules of Civil Procedure (CR) 52.01 provides the general framework for the family court as well as review in the Court of Appeals: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] ... Findings of fact,

shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (An appellate court may set aside a lower court's findings made pursuant to CR 52.01 "only if those findings are clearly erroneous."). Specifically related to child support, this Court stated in *Seay v. Seay*, 404 S.W.3d 215, 217 (Ky. App. 2013):

> At the outset we note, that "[a]s are most other aspects of domestic relations law, the establishment, modification, and enforcement of child support are prescribed in their general contours by statute and are largely left, within the statutory parameters, to the sound discretion of the trial court." *Van Meter v. Smith*, 14 S.W.3d 569, 572 (Ky. App. 2000). "However, a trial court's discretion is not unlimited. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001).

This issue before this Court, however, is one of statutory interpretation, which requires *de novo* review. *Roach v. Hedges*, 419 S.W.3d 46, 47 (Ky. App. 2013).

This Court must decide whether the trial court's decision to assign May 30, 2014, as the end of the school year, and therefore the termination date for Brett's obligation to pay child support, was correct as a matter of law. KRS 403.213(3) provides for the termination of child support upon emancipation of the minor, but extends this period to a certain extent if the child is still a high school student:

> Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child shall be terminated by emancipation of the child

unless the child is a high school student when he reaches the age of eighteen (18). In cases where the child becomes emancipated because of age, but not due to marriage, while still a high school student, the court-ordered support shall continue while the child is a high school student, but not beyond completion of the school year during which the child reaches the age of nineteen (19) years. . . .

■ As this Court stated in *Smiley v. Browning*, 8 S.W.3d 887, 889 (Ky. App. 1999), "[KRS 403.213(3) ] clearly is intended to encourage young persons to continue their educations and to obtain their high school diplomas by requiring any noncustodial parent to continue paying child support during the school year in which a particular child reaches the age of nineteen, provided the child is a 'high school student.'" The amendments to this statute in 1992 represented "a change in Kentucky's public policy regarding the duration of child support. . . . The statutory intent to recognize the necessity of a high school education in today's society is readily apparent." *Marcinek v. Com. ex rel. Marcum*, 999 S.W.2d 721, 723 (Ky. App. 1999). *See also Com. ex rel. Francis v. Francis*, 148 S.W.3d 805 (Ky. 2004). Here, the court determined that this statute applied to extend Brett's child support obligation past the child's eighteenth birthday. The evidence established that the child turned nineteen years old just after beginning his senior year in November 2013. This ruling has not been challenged on appeal.

■ What has been challenged is the trial court's decision to terminate child support on May 30, 2014, the date it set for the end of the normal 2013–2014 academic

school year. Tami argues that the termination date should either be June 30, 2014, pursuant to KRS 158.050, or extended until the child completed his senior year in November 2014, pursuant to KRS 158.070(8), which would have coincided with the child's twentieth birthday on November 15, 2014.

KRS 158.050 provides that "[t]he school year shall begin on July 1 and end on June 30." Based upon the plain language of this statute, the trial court erred as a matter of law in assigning May 30, 2014, as the end of the academic school year. Accordingly, we must reverse the trial court's assignment of May 30, 2014, as the end of the school year.

■ However, Tami also argues that the academic year for her child should have been extended an additional five months after June 30th to accommodate his educational needs. KRS 158.070(8) provides for continuing education time for students to achieve the necessary outcomes:

Schools shall provide continuing education for those students who are determined to need additional time to achieve the outcomes defined in KRS 158.6451, and schools shall not be limited to the minimum school term in providing this education. Continuing education time may include extended days, extended weeks, or extended years. . . .

We disagree with Tami that the trial court erred or abused its discretion in failing to extend the child's school year through November 2014. Based upon the circumstances of this case, including the lengthy extension of his sophomore year,[3] we find no abuse of the trial court's consid-

**3.** Most of the first year of the child's twenty-seven-month sophomore term took place pri- or to Tami's cancer diagnosis.

erable discretion in declining to extend the school year until the projected completion of the child's senior term in November 2014.

As an aside, we find it troubling that Tami stated in her motion and informed the trial court at the hearing on the motion to alter, amend, or vacate that if the original ruling stood, the child would be forced to stop his education and seek employment to make up the lost child support because of her own inability to work. In her motion, she stated that "it would all be up to the student/child to earn the loss of the support" because of her medical problems. While there is no evidence in the record to support that the child has indeed stopped his education and taken a full-time job, Tami stated in her brief as follows:

The result has been that the hours he spent every day studying and doing his school work to achieve his diploma and good grades is now, and has been after the court ruling instead spent working a full time job to make up for the 99% of support and medical that was taken from him. Unfortunately the appellant with her disabilities and cancer issues including recent setbacks in procedures and emergency surgery and hospitalization, is unable to supply and make up for the lost 99% support & medical support lost from the father. The child working full time to support himself is exhausting and his ability to focus on school work at a min.

We note that Tami has been capably representing herself throughout these proceedings, making numerous appearances at the trial court level and filing motions below and her own appellate briefs in this Court. Requiring her son to seek full-time employment would certainly go against her testimony that his education was a priority in their household.

For the foregoing reasons, the orders of the Jefferson Family Court are reversed and remanded to the extent that the child support obligation should be extended to June 30, 2014. The orders are otherwise affirmed.

ALL CONCUR.